Argued and submitted March 17, affirmed April 28, 1999

## STATE OF OREGON,
### *Appellant,*

*v.*

## DAVID PAUL WAAGE,
### *Respondent.*

## (97-1026; CA A101986)

981 P2d 333

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Kevin T. Lafky argued and cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

### DE MUNIZ, P. J.

The state appeals from a judgment imposing downward departure sentences of probation under the sentencing guidelines on defendant's four convictions for using a child in a display of sexually explicit conduct, ORS 163.670,[1] and one conviction for attempted second-degree rape, ORS 163.365(1). The state argues that evidence in the record does not support the trial court's finding of a substantial and compelling reason for imposing departure sentences. Because we conclude that evidence in the record supports the trial court's finding, we affirm.

ORS 138.222(3) provides:

"In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure from the sentence prescribed by the rules of the Oregon Criminal Justice Commission:

"(a) Are supported by the evidence in the record, and;

"(b) Constitute substantial and compelling reasons for departure."

A sentencing court has discretion to impose a departure sentence if it finds substantial and compelling reasons to do so. *State v. Watkins*, 146 Or App 338, 341, 932 P2d 107, *rev den* 325 Or 438 (1997). Our review is of the sentencing court's factual basis for departing, not of the decision whether to depart. *State v. Wilson*, 111 Or App 147, 149, 826 P2d 1010 (1992).

In the present proceeding, defendant was charged with 10 counts of using a child in a display of sexually explicit conduct, one count of attempted rape in the second degree, and three counts of sexual abuse in the second degree. Pursuant to a plea bargain, defendant pled guilty to four counts of using a child in a display of sexually explicit conduct and

---

[1] U·ing a child in a display of sexually explicit conduct currently carries a mandatory ·inimum sentence of 70 months, pursuant to ORS 137.700(4)(b)(B). That provisi· n was not in effect at the time of defendant's crimes.

pled no contest to one count of attempted rape in the second degree. The other charges were dismissed. The sentencing court determined that all four convictions for using a child in a display of sexually explicit conduct were from separate criminal episodes and were ranked in gridblock 8A on the sentencing guidelines, which carries a presumptive sentence of 41 to 45 months. The court further determined that the attempted rape was ranked in gridblock 6B of the guidelines, which carries a presumptive sentence of 19 to 24 months. Ultimately, the court imposed a downward dispositional departure sentence of five years' probation on all five convictions, making the following finding:

> "That the following factors are substantial and compelling reasons for a dispositional departure on all of the above counts. That the defendant is amenable to treatment, that suitable treatment is available and protection of the community is best served by requiring sex offender treatment. That a lengthy period of incarceration in the present proceeding would increase the likelihood that defendant would not receive sex offender treatment in a secure setting such as is available in Ward 50H of the Oregon State Mental Hospital."

On appeal, the state asserts that evidence in the record does not support the trial court's finding that suitable sexual offender treatment is available to defendant. We review the trial court's finding that treatment was available to determine if it is "supported by the evidence in the record." ORS 138.222(3)(a).

Shortly before defendant was sentenced on the present convictions, he was sentenced in federal court to a five-year term for possession of child pornography. He also was sentenced to a 29-month prison term in a separate proceeding in Marion County on two counts of second-degree sexual abuse and one count of using a child in a display of sexually explicit conduct. At sentencing in the present case, defendant presented testimony that he was amenable to sexual offender treatment and that treatment was available. We briefly review that evidence.

Dr. McGovern, a clinical psychologist, testified that he evaluated defendant in the summer of 1997 and again in

November 1997. He indicated that he had consulted with Dr. Lally at the Oregon State Hospital, as well as Dr. Hernandez, the clinical director of a sexual treatment program for federal prisoners at Butner, North Carolina. He had also consulted with several other mental health professionals. He reported that there was a consensus among all of them that defendant was in need of sexual offender treatment and that he was amenable to treatment, particularly given that he appeared to have adequate cognitive skills and no psychosis. He testified that defendant had been evaluated pursuant to a court order for the Oregon State Hospital program and that he received a favorable evaluation. The following exchange took place:

"Q:    [by defense counsel] Based on the sentencing situation that exists today, in other words, Mr. Waage got five years in the federal court on Monday with a recommendation, referral to that Federal Bureau of Prisons facility in Butner, but then he got the additional 29 months in Marion County. What now is the treatment likelihood or situation for Mr. Waage, given those two sentences?

"A:    Well, if Mr. Waage were able to, through some type of coordination among jurisdictions, to complete his state time first, if I may say that, then he could be ordered—depending upon the sentence today, he could be ordered directly into the sexual offenders program.

"I talked with Dr. Lally yesterday, who consulted with his superior, who consulted with his superior, and he indicated that from his point of view he could be sentenced to that program.

"Q:    That's the Oregon State Hospital?

"A:    The Oregon State Hospital program which has been there for numerous years. From there, if this could be coordinated, he would then go to a federal facility to complete his time and then be taken into the program at Butner and then be released into the community.

"* * * * *

"Q:    All right. Based on your conversations with Dr. Hernandez, the director of the federal prison facility, as well as Dr. Lally, the administrator of the Oregon State Hospital offender treatment program, is it your understanding that

*both of those programs are available to Mr. Waage* assuming the logistics of the sentences is appropriate?

"A: *Yes. If the logistics—and I've talked to both of them within the last 24 hours. If the logistics can be worked out between the counties, the jurisdictions, the judges, then treatment is available.*" (Emphasis added.)

McGovern went on to explain, however, that if defendant were to receive a lengthy prison sentence in the present case, to be served consecutively to his other sentences, he would have little chance of getting into the federal sex offender program at Butner, because that program does not take prisoners who have lengthy prison sentences to complete after the federal treatment program ends. McGovern also stated that defendant's family had been paying for defendant to receive private treatment while he was incarcerated at Sheridan in the months before the present sentencing. On cross-examination, he reiterated that defendant's family planned to "provide treatment either directly through the state and federal or individual programs that are available." The court then asked McGovern if individuals sentenced to the Department of Corrections were eligible for the Oregon State Hospital program, and McGovern replied, "Only if you order them there. They will not go there unless they are court ordered by a judge to go there." The court then clarified that, if defendant were to receive additional sentences of about 17 years—consecutive guidelines presumptive sentences on the current convictions—it would be very unlikely that defendant would receive sexual offender treatment in the federal system. The court then asked:

"Q: [by the court] Do you have any sense of—if this court were to order Mr. Waage into the 50H program whether he would be required to complete that program before he would go into the federal program? Do you have any sense of how that would work?

"A: Well, would he be required? I think that's something that needs to be negotiated between the jurisdictions and the judges. If he is ordered to the state hospital program today then I would assume he would have to successfully complete a treatment program first."

Another clinical psychologist, Dr. LoPiccolo, testified that he also had evaluated defendant and had concluded that defendant was amenable to sex offender treatment.

In closing argument, the prosecutor stated:

"It appears that he would be able to participate in treatment toward the end of his sentence in Oregon State Hospital as long as the court orders him into treatment and it is also possible if the—apparently it's possible theoretically if the defendant were sentenced on the state charges, somehow got to go to prison on the state charges first and then the federal charges, he would be able to enter into the treatment program that counsel requests.

"However, I'd like to point out that the children of Oregon will be completely safe only if the defendant is in prison."

In closing argument, defense counsel stated:

"Federal system says it's unlikely that we'll take him into Butner if he's going to do prison time after his federal sentence. After he got the consecutive time yesterday in Marion County, I called John Diets, Assistant U. S. Attorney on this case, and talked to him and said well, if Mr. Waage is going to go into the federal system and he's not going to get the treatment he needs, would you consider talking to Judge Haggerty and seeing if we can put him in the state system first and then go into the federal system.

"And I don't know. Diets agreed that he would do that, that if the only difference was not a difference in time but the difference was whether he would get treatment at Butner or not that he would cooperate in approaching Judge Haggerty and allowing that to happen."

The trial court found that defendant "is amenable to treatment, that there is effective treatment available for him in an inpatient treatment program either through the state hospital or through the federal system." The court then indicated that it would impose a sentence of five years of bench probation, with a condition of probation being that defendant successfully complete a sex offender treatment program. The prosecutor stated that it was her understanding that "defendant would not even be eligible for the treatment program, assuming that he could serve the state time first, for nearly

five years. At that time the defendant's bench probation would be over." The court agreed that it would not sign the judgment until the prosecutor had the opportunity to file a motion requesting the court to review the sentence. Although the record does not show that any motion was subsequently filed, the court later held a telephonic hearing on the sentencing. At that hearing, the prosecutor made the following argument:

> "The defendant is currently in federal custody. The fact that he has a state detainer means that he will not be able to go to the federal treatment program. He will have to serve his federal time first and then he will come and serve his state time and while he's in federal custody he will not be able to have that treatment.

> "The second thing is that I—I was given to understand at that hearing that there might in the future be a possibility that the defendant would be serving his state time first rather than the federal time, if Mr. Lafky could work that out with Marion County.

> "It's my understanding that that has failed, that that will not be happening. In addition, I spoke with the Federal Bureau of Prisons yesterday, Mark Henderson of that agency, and he said that there's really no such thing. There's nothing in their protocol that provides for release from federal custody into a state sex offender program while they're still in federal custody.

> "* * * * *

> "And there is nothing contained in the record that I can remember that demonstrates that Mr. Waage actually can go to a treatment program within the period of time of probation."

In response to those statements, the trial court noted that there might be difficulties but that he believed that appropriate arrangements could be made to get defendant either into the federal program or into the Oregon State Hospital program. The court stated:

> "[A]s soon as I get this order signed it's my intention to arrange a discussion with both the state and federal systems and discuss with them this court's order and this court's desire and intention.

> "If at that point in time it becomes apparent that there's absolutely no way to get Mr. Waage into treatment during the course of time that this court has probation over him, then that certainly raises another issue and at that point in time we would—I would certainly have to consider whether or not it was appropriate to continue the probationary sentence which has as part of it a condition that he successfully complete a sex offender treatment program."

The court also noted, and the prosecutor agreed, that it had been recommended that, as part of his federal sentence, defendant receive sex offender treatment in the federal system. The court then discussed the steps it would take to contact the relevant state and federal corrections officials to try to ensure that defendant would be placed into one of the sex offender treatment programs.

OAR 213-008-0002(1)(a) provides a nonexclusive list of mitigating factors that a sentencing court may consider in determining whether to impose a departure sentence under the sentencing guidelines. OAR 213-008-0002(1)(a)(I) provides, in part: "The offender is amenable to treatment and an appropriate treatment program is available to which the offender can be admitted within a reasonable period of time[.]".

The state argues on appeal that evidence in the record does not support use of this mitigating factor because the record does not adequately demonstrate that an appropriate treatment program is available. The state argues that the court based "its departure on mere speculation and conjecture, its own hopeful belief that it *may* in the future be able to shoehorn defendant into some appropriate treatment program." The state argues that OAR 213-008-0002(1)(a)(I) is only satisfied if the record demonstrates that it is an absolute certainty that a defendant will be admitted into a particular treatment program. We do not agree. The question is whether the trial court's finding that the "offender is amenable to treatment and an appropriate treatment program is available to which the offender can be admitted within a reasonable period of time," OAR 213-008-0002(1)(a)(I), is "supported by evidence in the record." ORS 138.222(3)(a). We hold that it is.

■ As set forth at length above, defense witnesses provided information that defendant had been evaluated and recommended for placement in two separate inpatient sex offender treatment programs. The record demonstrates that defense counsel, several mental health professionals retained by defendant, defendant's family, and the sentencing court that would supervise defendant's probation were all actively working out the logistical problems of when defendant would get into one of these programs. OAR 213-008-0002(1)(a)(I) requires the court to find that there is "an appropriate treatment program * * * to which the offender *can* be admitted within a reasonable period of time." (Emphasis added.) The state would have us read "can be" as "will be" or "must be." The word "can" in this context carries a connotation of possibility, or at the most, probability; it does not carry a connotation of certainty. *See Webster's Third New Int'l Dictionary*, 323 (unabridged ed 1993) ("be made possible or probable by circumstances to").

The evidence in this record shows that there was a possibility, and even a probability, that defendant would be admitted into one of the recommended treatment programs within a reasonable time. Although the prosecutor's statements during the final telephone hearing that she did not believe that defendant would be able to get into the federal program may carry some weight, *see State v. Balkin*, 134 Or App 240, 242, 895 P2d 311, *rev den* 321 Or 397 (1995) (sentencing court may rely on prosecutor's statements at sentencing if it finds them to be reliable), it does not negate or trump the other evidence in the record that defendant "can be admitted" into a sexual offender treatment program. Evidence in the record supports the trial court's finding under OAR 213-008-0002(1)(a)(I).

Affirmed.